IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELIDA M. SEGOVIA,                §
                                 §
            Plaintiff,           §
                                 §   Civil Action No. 3:04-CV-2246-D
VS.                              §
                                 §
JO ANNE B. BARNHART,             §
COMMISSIONER OF SOCIAL           §
SECURITY,                        §
                                 §
            Defendant.           §

<u>MEMORANDUM OPINION</u>

Plaintiff Elida M. Segovia ("Segovia") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits under title II of the Act. For the reasons that follow, the court affirms the Commissioner's decision in part, vacates it in part, and remands for further proceedings.

I

Segovia filed an application for disability insurance benefits on December 31, 2002, alleging an onset date of October 23, 2002 and contending that she is disabled due to depression and chronic pain in her lower back, hip, and left leg. Following denials of her application initially and on reconsideration, she filed a request for a hearing before an administrative law judge ("ALJ"). At the time of the hearing, she was 44 years old. She had

completed the eleventh grade but had not had obtained her GED.  She had past relevant work as a receptionist, driver, dispatcher, and small assembly worker.  Following a hearing, the ALJ found that Segovia is not disabled.

The ALJ determined at the second step of the five-step sequential process that Segovia's depression constituted only a slight abnormality that would not be expected to interfere with her ability to work, regardless of her age, education, and work experience.  The ALJ therefore found that her depression was not severe.

The ALJ next considered Segovia's other impairments, which include myofascial pain disorder, sacral sprain, chronic lumbar radiculopathy, and lumbar disk injury.  She found at the second step that these impairments were severe.  The ALJ noted, however, that X-rays revealed no nerve root compression, examinations consistently failed to indicate motor, sensory, or reflex loss, and Segovia engaged in a full range of daily activities.  The ALJ found that the back impairment did not preclude Segovia from ambulating effectively.  She concluded at the third step that Segovia's impairments were not severe enough to meet or equal Listing 1.04 or 12.04 or any impairment listed in 20 C.F.R., pt. 404, subpart P, app. 1.

After considering the relevant medical evidence, the ALJ found that Segovia has the residual functioning capacity ("RFC") to "sit

six hours in an eight-hour workday, stand and/or walk six hours in an eight-hour workday, lift and/or carry twenty-five pounds frequently and fifty pounds occasionally, and push and/or pull commensurate with her lifting limitations." R. 23. Based on this assessment, the ALJ assigned Segovia an RFC of medium work activity and determined that she could perform her past relevant work as a receptionist, dispatcher, and driver. The ALJ therefore concluded that she is not disabled.

The Appeals Council denied her request for review. The Appeals Council's decision became the final decision of the Commissioner. Segovia now seeks judicial review.[1]

II

The court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great

_____

[1]Segovia filed her motion for summary judgment without a supporting brief and did not file the brief until after the Commissioner filed her cross-motion for summary judgment and combined brief in support of her cross-motion and response to Segovia's motion. The court by April 20, 2005 order directed the Commissioner to file a supplemental brief no later than May 25, 2005 and encouraged Segovia to file a combined reply in support of her motion and response to the Commissioner's cross-motion, establishing a June 6, 2005 deadline. The Commissioner has filed a supplemental brief, but Segovia has not replied. This case is now ripe for disposition.

deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citation omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (internal quotation marks and citation omitted). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically-determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  To establish disability, the record must show that the limitations imposed by Segovia's conditions prevent her from engaging in any substantial gainful activity.  *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as the trier of fact.  The court weighs four elements of proof to determine if there is substantial evidence of disability: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

III

Segovia contends the ALJ erred at the second step of the sequential process when she determined that Segovia's depression was not severe.  Segovia maintains that the ALJ made a medical

determination that she is not qualified to render, failed to call a medical expert to testify at the hearing, and failed to give appropriate weight to a consulting psychologist's report.

A

Segovia argues that the ALJ improperly made a medical determination when she concluded that Segovia's depression constituted only a slight abnormality that had such a minimal effect that it would not be expected to interfere with her ability to work. The court disagrees. Whether an impairment is severe at step two of the sequential process is not a medical determination, but is instead an administrative finding that is dispositive of a case. *See* 20 C.F.R. § 416.927(e) (2004); SSR 96-5p. In this circuit, an ALJ may properly conclude that an impairment is not severe only if she expressly finds that it "is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (alteration in original) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (per curiam)); *see id.* at 1106. When the ALJ examined the relevant evidence and made the finding that Segovia challenges, she was not making a medical determination, but was instead operating within her authority to make an administrative finding in accordance with *Stone* and the applicable regulation.

There is substantial evidence to support the ALJ's conclusion that Segovia's depression was not severe. Segovia has never received treatment for depressive disorder other than to receive anti-depressant medication that was probably prescribed for pain relief rather than to treat depression. Although a consultative examiner diagnosed her as having depression, none of her treating physicians referred her to a psychiatrist or suggested counseling. The record contains evidence that her depression did not limit her daily activities. On a typical day, she cleans, does laundry, prepares meals, exercises some before resting, and shops for groceries, even though some of these activities require effort and are difficult due to pain. She continues to drive, uses the post office, and pays her bills. Segovia reported that visiting friends and neighbors and doing outside activities requires effort, but she continues to attend church weekly and go to movies. The ALJ noted that Segovia reported that she did not have problems with depression before she began experiencing problems with pain, and she had been taking Zoloft for only one month. Segovia's concentration was rated to be fair, and her memory and fund of information were good. There was no indication that she had ever experienced an extended episode of decompensation. These facts constitute substantial evidence that Segovia's depression constituted only a slight abnormality that would not be expected to interfere with her ability to work, irrespective of age, education,

or work experience.

B

Segovia complains that the ALJ failed to have a medical expert in attendance at the hearing who was qualified to make a judgment that her mental problems were not severe.  The decision to call a medical expert to testify at the hearing is within the discretion of the ALJ.  *See Smith ex rel. Smith v. Apfel*, 87 F.Supp.2d 621, 629 (W.D. La. 2000) (citing 20 C.F.R. § 416.927(f)(2); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (per curiam)).  Segovia has not demonstrated that the ALJ abused her discretion under the circumstances of this case.  She advances only a conclusory complaint about the failure to have a medical expert present, and it appears to be tied to her principal assertion that the ALJ improperly rendered a medical opinion.  She has therefore failed to demonstrate reversible error on this basis.

C

Segovia contends that the ALJ did not afford the consulting psychologist's report appropriate weight.  John Lehman, Ph.D. ("Dr. Lehman"), a clinical psychologist, conducted a clinical interview and mental status evaluation of Segovia in conjunction with her request for benefits and submitted a report that the ALJ considered.  Based on the interview, he diagnosed Segovia with "major depressive disorder, recurrent, moderate," assigned a global assessment functioning ("GAF") score of 60, and recommended that

she participate in counseling.[2]

Segovia points to the ALJ's discussion of Dr. Lehman's assessment of major depressive disorder and cites the ALJ's observation that a person with a GAF score of 60 "would be expected to have moderate difficulty [with] social, occupational and school functioning[.]" P. Br. at 8 (quoting R. 20). She argues that, despite Dr. Lehman's report, the ALJ abused her discretion and acted in the absence of substantial evidence by determining that Segovia's depression was nonsevere.

Segovia's argument that the ALJ did not give proper weight to Dr. Lehman's report is premised on nothing more than the mere assertion that a person diagnosed with major depressive disorder, who has a GAF score of 60,[3] must necessarily have a severe impairment under 20 C.F.R. § 404.1520. *See* P. Br. at 9. This contention lacks force. *See Hammond v. Barnhart*, 124 Fed. Appx.

---

[2]The Commissioner argues that Segovia has not participated in recommended mental health treatment and that the ALJ may treat her failure to follow the prescribed treatment regimen as an indication that her condition is not disabling. The court rejects this argument because it appears to misread the record. Dr. Lehman noted that Segovia had not obtained counseling in the past, but he recommended that she do so in the future. Dr. Lehman did not indicate that she had failed to attend counseling after it was recommended to her. *See* R. 205 ("[Counseling] was recommended to her, as she has had no counseling to help her deal with her situation.").

[3]Segovia argues explicitly that "[a]n individual with major depressive disorder has a severe impairment as defined in 20 CFR Section 404.1520." P. Br. at 9. Her argument that a person with a GAF score of 60 necessarily has a severe impairment is implicit in her principal assertion.

847, 853 & n.14 (5th Cir. 2005) (unpublished opinion) (declining to reverse ALJ's determination that depression was not severe notwithstanding finding that claimant suffered from major depressive disorder, noting that "major" in "major depressive disorder" is medical term that does not mandate finding that impairment is "severe" within meaning of the law); *Didlake v. Barnhart*, 2003 US Dist. LEXIS 21419, at *30-*31 (N.D. Tex. Sept. 3, 2003) (Bleil, J.) (rejecting claimant's argument that GAF score of 60 was inconsistent with ALJ's conclusion that depression was nonsevere), *rec. adopted*, 2003 US Dist. LEXIS 21418 (N.D. Tex. Oct. 29, 2003) (Means, J.); *Munson v. Barnhart*, 217 F.Supp.2d 162, 165 (D. Me. 2002) (noting lack of authority for proposition that GAF score of 60 is inherently inconsistent with determination that mental impairment is nonsevere).

Accordingly, Segovia has failed to demonstrate that the ALJ's determination should be reversed on the basis of the finding that Segovia's depression was not severe.

IV

Segovia argues that the ALJ erred by rejecting the medical source statement of her treating physician. She complains that the ALJ improperly rejected the RFC assessment of Sherine B. Reno, M.D. ("Dr. Reno"), a physician who treated Segovia for pain.

- 10 -

A

Segovia began seeing Dr. Reno in March 2002 and continued under her care through the date of the hearing. Before the hearing, Segovia submitted for the ALJ's consideration a medical source statement that Dr. Reno completed.[4] Dr. Reno opined that Segovia is capable of "less than a full range of sedentary work with inability to stand or walk more than 2 hours (each) out of an 8-hour workday and the added restriction of three hours of rest required during an eight-hour workday in addition to lunch and regular breaks." R. 23. The ALJ noted, however, that Dr. Reno's opinion was unsupported by other evidence and ultimately gave it no evidentiary weight:

> The statement by Dr. Reno was provided on a check-list form from the claimant's representative. The claimant's own clinical records, as detailed above, provide no basis for the extreme limitations imposed. The claimant walks without the aid of assistive devices. Examinations consistently show no neurological deficits and x-rays of the lumbar spine show no abnormalities. As set out above, the claimant engages in a wide range of daily activities that are also inconsistent with the assessment of Dr. Reno. As such, the [ALJ] finds [Dr. Reno's] opinions to be unsupported and entitled to no evidentiary weight.

*Id.* (citing 20 C.F.R. § 404.1527; SSR 96-2p; SSR 96-5p).

---

[4]The ALJ indicated that Dr. Reno's medical source statement was dated May 2, 2003. The court has been unable to locate in the record a statement by Dr. Reno made on this date. It is possible that the ALJ intended instead to refer to Dr. Reno's November 10, 2003 medical source statement. *See* R. 230-35.

- 11 -

B

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*, 64 F.3d at 176).

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise supported by the evidence.

*Id.* at 455-56 (citations, quotation marks, and brackets omitted). In some circumstances, the ALJ must analyze a treating specialist's opinion in light of six factors contained in 20 C.F.R. § 404.1527(d) before giving little or no weight to that opinion. *See Sailsbury v. Comm'r of Soc. Sec.*, No. 3:02-CV-2759-D, slip op. at 7-8 (N.D. Tex. Oct. 31, 2003) (Fitzwater, J.) (citing *Newton*, 209 F.3d at 456). The six factors are:

> (1) the physician's length of treatment of the
> claimant, (2) the physician's frequency of
> examination, (3) the nature and extent of the
> treatment relationship, (4) the support of the
> physician's opinion afforded by the medical
> evidence of record, (5) the consistency of the
> opinion with the record as a whole, (6) the
> specialization of the treating physician.

*Newton*, 209 F.3d at 456.

In *Sailsbury* the ALJ gave little evidentiary weight to a treating specialist's opinions about the claimant's RFC because his opinions were not supported by his own clinical findings or the claimant's testimony regarding his daily activities. *Sailsbury*, No. 3:02-CV-2759-D, at 3. This court vacated the decision because the ALJ did not consider each of the § 404.1527(d) factors. *See id.* at 7. In reaching its decision, the court distinguished its prior decisions in *Grimes v. Barnhart*, No. 3:01-CV-0940-D (N.D. Tex. Mar. 18, 2002) (Fitzwater, J.), and *Tipps v. Barnhart*, No. 3:01-CV-1295-D (N.D. Tex. Mar. 14, 2002) (Fitzwater, J.), in which it had found no error in an ALJ's failure to address each of the § 404.1527(d) factors. The court noted that, in *Grimes* and *Tipps*, the treating physician's opinions were controverted by reliable medical evidence from another examining or treating physician. The court reasoned that

> [u]nder *Newton*, the ALJ is required to perform
> a detailed analysis of the treating
> physician's views under the criteria set forth
> in 20 C.F.R. § 404.1527(d)(2) only when there
> is an absence of reliable medical evidence
> from a treating or examining physician
> controverting the claimant's treating

- 13 -

specialist.

*Sailsbury*, No. 3:02-CV-2759-D, at 9 (quoting *Grimes*, No. 3:01-CV-940-D, at 12; *Tipps*, No. 3:01-CV-1295-D, at 11-12).

The ALJ in the instant case discounted Dr. Reno's assessment of Segovia's physical limitations because it was not supported by Segovia's clinical records and was inconsistent with her reported daily activities. *See* R. 23. The court is unable to conclude, however, that the ALJ considered any reliable medical evidence of an examining or treating physician that controverted Dr. Reno's assessment of Segovia's limitations. Absent such contradictory evidence, the court cannot say that the ALJ was permitted to reject Dr. Reno's opinion without analyzing each § 404.1527(d) factor. *Cf*. *Sailsbury*, No. 3:02-CV-2759-D, at 7-10; *Herron v. Barnhart*, No. 3:01-CV-1689-D, slip op. at 12 (N.D. Tex. Mar. 6, 2002) (Fitzwater, J.) ("Because the ALJ based his decision on reliable medical evidence from . . . an examining physician[ ] controverting the claimant's treating specialist, the ALJ was not required . . . to perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

The Commissioner contends that the ALJ "specifically analyzed the opinion of Dr. Reno[ ] under the factors set forth in 20 C.F.R. § 404.1527(d)." D. Supp. Br. at 9 (citing R. 19, 23). The court disagrees. The ALJ observed facts significant to an analysis under the six factors, *see, e.g.,* R. 19 (noting that Dr. Reno began

- 14 -

treating Segovia in March 2002), and the record contains additional information relevant to the inquiry, *see, e.g., id.* at 175-82, 184-86, 188, 190-202, 235-55 (indicating frequency of Segovia's visits to Dr. Reno).   But the court disagrees that the ALJ's decision demonstrates that she "perform[ed] a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *See Sailsbury*, No. 3:02-CV-2759-D, at 9. Although the ALJ is of course free to find on remand that the evidence does not support the conclusion that Segovia is disabled, she cannot reach this result without assessing Dr. Reno's opinions according to the required procedures, including analyzing the six factors contained in § 404.1527(d) or finding that there is reliable medical evidence of a treating or examining physician that controverts Dr. Reno's assessment of Segovia's limitations.[5]

       As the court said in *Sailsbury*,

              [t]oday's decision is a narrow one that may
              ultimately prove to be largely procedural.   In
              the circumstances presented here, the ALJ was
              obligated to consider and address the factors
              set out in § 1527(d) before according Dr.
              [Reno]'s opinion [no] weight.   [She] did not
              do so, and the Commissioner's decision must be
              vacated and this matter remanded for further
              proceedings.

*Sailsbury*, No. 3:02-CV-2759-D, at 10 (footnote omitted).

---

       [5]Segovia contends that the ALJ was obligated to re-contact Dr. Reno before rejecting her opinion and that the ALJ's failure to notify Segovia's counsel of concerns regarding Dr. Reno's statement constituted a denial of due process.   The court need not reach these arguments.

                          *      *      *

        The Commissioner's decision is AFFIRMED in part and VACATED in
part and REMANDED to the Commissioner for further proceedings
consistent with this memorandum opinion.

        August 9, 2005.


                                    _____
                                    SIDNEY A. FITZWATER
                                    UNITED STATES DISTRICT JUDGE


                                - 16 -